I'll now ask the support team to announce the session. Please be seated. Madam Clerk, case. 3-16-0489, Jerry Sottos, abolieved by Thomas Buda, of the Board of Trustees of the Firefighters' Pension Fund of the City of Moline, abolieved by Keith Carlson. May it please the Court. Proceed. Good afternoon. My name is Keith Carlson. I represent the appellant in this case, the Moline Firefighters' Pension Board. Largely, this case focuses around when an applicable salary becomes effective for purposes of determining a pension benefit. The statute makes relatively clear when that period of time should be fixed. It's when a person is removed from the payroll of the municipality. In this case, the credible testimony of the HR Director of the City of Moline testified that that occurred March 8, 2013, at the end of the PETA period, or Public Employee Disability Act period. The pension board then made a finding of fact regarding that matter, and as such, fixed the pension on that date. On that date, the effective pension amount was $73,829.32. And that's what the pension was based upon. The plaintiff has argued that that's an incorrect interpretation. It's important to remember that even though the pension board is the appellant in this case, the burden of proof still lies with the appellate. The plaintiff bears the burden of proof because the court reviews the pension board's decision, not the decision of the trial court. Largely, there are two different standards of proof that come to bear here, or the burden of proof. One is the manifest weight of the evidence standard. The manifest weight of the evidence standard applies to all determinations of fact. However, when there are mixed questions of fact and law, the clearly erroneous standard applies. Here, it is clearly a mixed question of fact and law, because it's about the fact of when a particular person was removed from the payroll for the City of Moline. That fact was determined by the pension board, and under the administrative review law, is deemed to be prima facie true. That decision has substantial evidence in the record. There was testimony that was subject to cross-examination by the HR director, who had direct knowledge of those facts, said that he was removed from the payroll in March of 2013. As such, the applicable salary there is what applies. The plaintiff instead comes before this court and argues that he's entitled to a pension based upon a salary he was never paid. At no time, in any point in the record, is there evidence that the plaintiff was paid a salary more than $75,000. That never occurred. There's some argument about some lump sum payout of time, benefit time, based upon that salary. However, the administrative code of Illinois that has been substantially relied upon, even in this court, in fact in the case of Justice O'Brien that you weighed in on Sedlock v. Ottawa Police Pension Board, that says, using that exact definition of salary, it says that lump sum payouts are not salary under the pension code, because they are not fixed reoccurring benefits. So therefore, again, the plaintiff sees... I think in that case that was going to a last highest pay rate. In this instance, isn't it being used to demonstrate continued employment, because the payment that he received was for accumulated vacation and comp time in March 2014, which he had received an earlier payment for some back pay for sick leave in June of 2013. So if he had already been terminated, why would there have been any accrual of additional vacation or comp time for payment out in March of 2014? That relationship between the city and Mr. Sotos is undeveloped in the record. In addition to that, why it occurred, I don't know. But what I can tell you, under any circumstance, he was never paid a salary of $75,000 plus. In addition to that, under the pension code and the DOI's administrative rules, section 4402.60, a lump sum payout of benefit time is not salary. Why he accumulated it, I don't know. There may have been a grievance. There's a lot of speculation as to why that occurs. However, it is the plaintiff's burden to establish those facts, to demonstrate that he was paid the salary that they claim of $75,674.93. But he was receiving workers' compensation benefits during the time that you said he was no longer receiving a salary. That's correct. He was removed from payroll and put under TTD, Temporary Total Disability under the Workers' Compensation Act, which is a separate set of benefits. If you look at the plain language of the Workers' Compensation Act, it establishes that it's not salary. It says, in fact, it's meant to be based upon salary. The very plain language of the Workers' Compensation Act indicates it's not salary. It's based upon salary, meaning that it's distinguished between two things. Also, as is elaborated further in our briefs, it establishes that under Illinois court law, salary and workers' compensation benefits are two distinct things. Finally, and we circle back, you have the administrative code that says that lump sum payouts do not constitute it. Then you have to look at this in the context of the entire Article IV of the pension code, which covers downstate fire pension funds. Article IV, Section 114.2, specifically allows for an offset of disability benefits versus TTD benefits. There literally is not a circumstance, if you were to accept the plaintiff's logic, that that section could ever occur. Because if TTD constitutes continuing service, when would there ever be an offset? It would read Section 114.2 of Article IV in a total nullity. In this case, the statute at issue is 4-110, right? Yes. Okay, so 1-1-0 provides that if a firefighter, as a result of sickness or accident or injury, etc., resulting from performance of an act of duty or from the cumulative effects of the acts of duty, is found to be physically or mentally permanently disabled for service in the fire department, as well as to render necessary his or her being placed on disability pension, the firefighter shall be entitled to a disability pension equal to or the greater of 165% of the monthly salary attached to the rank held by him or her in the fire department, at the date he or she is removed from the municipality's fire department payroll, or to the retirement pension that the firefighter would be eligible to receive if he or she retired, but not including any automatic annual increase in their retirement pension. Okay, so that's 4-110 West 2014. More specifically, the statutory interpretation question that we must resolve is what is the meaning of the at the date he or she is removed from the municipality's fire department payroll, the payroll cost, language contained in 4-110? I mean, to my knowledge, that is a question of first impression. We have found no, we haven't found any Illinois case to the issue, and none that have been cited to us by the parties. In addition, the administrative code cited, you know, by the board, you know, really that doesn't help us at all. The question before us doesn't involve any of those sections from the administrative code or the pension. You know, so how do we interpret all that? So what's the date, 2014? The date, according to the pension fund, is I believe it was March 8th of 2013 that he was removed from the payroll because that's the last date he received a full check from the municipality. After that, he was paid TTV benefits. They received these lump sum payments from the city, right? But the lump sum payments, specifically under the administrative code, are not pensionable salary. Well, they can be. Isn't it dependent on the date of the retirement of the disability? If your argument prevails, it would be no. But if he was not removed from the payroll until after the workers' compensation contracts were signed, then it could be. They should be considered salary, right? No, at no point is a lump sum payment of benefit time pensionable salary under the Illinois pension code. One, two, or three, or four? But see, he received that compensation vacation and compensatory time in March 2014, which is consistent with some 2016 advisory opinions from the IDOE, right? I'm sorry, I don't understand your question, Your Honor. I mean, he received this TTD workers' compensation benefit payments, right? He did receive TTD workers' compensation benefits after he was removed from payroll after PETA was terminated in March 3rd of 2013. What arrangements he made with the city and the reasons for those payments is unknown to us. What I can tell you, Judge, is that under no circumstances under Article IV is a lump sum payment constituted salary. For instance, at the end of a firefighter's career, let's just illuminate this fact very clearly. If at the end of your career as a firefighter you've built up several hours or days of vacation time and the municipality pays that amount out, that does not get added to your pensionable salary. Nor, like under IMRF, for instance, and perhaps the Judicial Retirement Pension System, I don't know, you can apply sick leave toward years of service. That does not exist under Article III or Article IV. So no lump sum payout ever counts toward creation of service or creation of a pensionable salary. And as such, it's somewhat spurious to look at those lump sum payments and try to bootstrap some back extrapolation. The last time that the plaintiff received a paycheck from the city for his full amount is at the end of the Public Employee Disability Act period. That's the last time he gets a 100% check from the city. You know, there's a TTT and workers' compensation benefit payment made to a firefighter for the purpose of Section 4-110 of the Pension Code. It appears that in the Roselle Police Pension Board case of 332 Illinois 2nd 559, where the legislature expressly or implicitly delegates to the agency the authority to clarify and define a specific statutory provision. Administrative interpretations of that provision should be given, you know, I'm very happy you brought up Roselle. Unfortunately, I argued Roselle and was on the losing side, but I know Roselle quite well. In that case, the DOI opinion was issued directly for that case. So what that was about was the surviving spouse benefit and whether or not you continue to get cost of living adjustments. And I would agree generally, Your Honor, that the DOI would be perhaps entitled to some deference in their interpretation of the statute. However, specifically with regard to determining pension purposes. Correct. Except the problem is, in this case, none of the DOI opinions, the ones submitted by the board, the ones submitted by the plaintiff, in any circumstance were actually based upon the facts of this case. We don't know which facts they were based upon. The actual letters to the DOI were not included. The factual support for those were included. In fact, the one that's submitted in the Chicago Heights case, or Chicago Ridge, I don't remember which one it was, that the plaintiff submitted in this case, is not conclusive at all. There's quite a great deal of waffling in saying, well, if the facts are slightly different, our opinion may change. They're very factually specific interpretations under the pension code. So in one circumstance, the opinion given by us, they say, no, TTD is not pensionable salary and it doesn't extend the period of time. And the one submitted by Mr. Duna in the plaintiff, they say it is, which goes to show that it's factually specific. In the Roselle case, it was actually an opinion about the case that was before the court. It was factually analyzed within the context of the actual case being examined by the court. The difference that can be offered here goes to show that the DOI is neither one way or the other. In that case, they said it was for pension purposes, in that case. In Roselle? Yeah. No, Your Honor. That had nothing to do with pensionable salary in Roselle. Roselle v. Roselle Police Pension Board was a case about whether or not a surviving spouse would continue to get cost of living adjustments every year. It's a totally different issue than pensionable salary. Pensionable salary is upstream for that. It's a part of the calculus by which you reach a benefit. So you would say the amount of salary is, in this case, the pension board would assert 73,000 plus, and the pensioner would say it's 75,000 plus, and you would apply the 65 percent to that. That was not at all the case. It was way down beyond that. It was a different question of law in Roselle v. Roselle. It was about whether or not, and it had nothing to do with workers' compensation. Okay. Well, you say this is a question of mixed law and fact. The question of, okay, isn't really the question of when was he removed from the fire department payroll? That is the key question. That's really it, isn't it? Absolutely. And what we're saying is that TTD benefits can't count that way. Otherwise, reading Article IV as a whole. How are TTD benefits calculated? My understanding is that they get 66 and two-thirds at some point during a firefighter's career. Not necessarily on their last day of work. I don't know how that works. Sixty-six and two-thirds, they do not ever get paid 100 percent. I do know that. And so the point is that the salary. But the 66 and two-thirds is based on? I don't know what they take into account. If it's base salary, I don't know if they take into account specialty pay. I don't know if they take into account duty availability pay, all of which would be elements of pensionable salary. But, yes, in general terms, it is 66 and two-thirds of some sort of regular ongoing payment afforded to the firefighter. I would agree with that. In the facts of this case, was that TTD benefit ever modified? Not that it's in the administrative record as developed by the plaintiff. And, again, it's the plaintiff's obligation. It's his burden in this case to prove his entitlement to a benefit and the amount of that benefit. If they didn't prove anything, how did the original order get entered based on the salary of $75,000 that was? Are you saying that your client grabbed a number out of the air for its original order? I'm saying that our client made an error and they quickly addressed that because they found out that he had been removed from the payroll at a different period of time. But where did they get the – I mean, the number is the number that the plaintiff says is the correct amount. The deliberative process of how that occurred, I don't know. And I don't believe that the record develops that. So you're saying that they got a number out of the thin air in the first round of the hearing? No, I'm not saying it's out of thin air. I'm saying I don't know where they got it from. I don't know if they looked at the collective bargaining agreement and made an error in saying, no, this is this. I don't know if they didn't know that he was on TTD during that time. I don't know if the village – or the city, I'm sorry – reported the wrong number. I don't know how that occurred is what I'm saying. I'm not saying that they just went out and guessed and it happened to coincide with collective bargaining. Well, you can't say that. Arguably, the statute says that it's the salary attached to the rank. That's correct. So that's clear. Correct. The point is this, is that he wasn't in service when that salary was being paid. Unless you're not aware that he was – your human resources person says, oh, he's off the payroll about a year earlier, right? Correct. When he was removed – And that his rank, his salary of his rank was the lower figure. Correct. And at no point was he ever paid $75,000 plus. No point. Well, it was paid TTD benefits, which is based on the salary. But we don't know if that TTD benefit was ever based upon the $75,000. That's the problem. I'm sorry, you have one minute. In addition, the – you cannot ignore the importance of the role that 4-114.2 plays here. If you are to say that TTD benefits constitute continued service and a basis for salary by reverse extrapolation of looking at what salary is used for TTD, then there is no point at which there would be an offset against workers' compensation benefits. It just wouldn't exist. So the legislature, by enacting 4-114.2 – And the offset is against what? Against TTD. So here's how it would be applied in this case. He's removed from – the plaintiff is removed from payroll 3-8 of 2013. Pension benefits are paid retroactive to – would be 3-9 of 2013. Those benefits, then, are reduced by the amount of TTD benefits received. There's no point that that would ever occur if that continues to be good service time. It's impossible to occur. Because if it's continued service time, there would never be an offset. That's the only time that an offset occurs is with TTD benefits. It doesn't account against loss of a person as a whole or any of the other elements of workers' compensation. It applies against that. And so if the legislature intended TTD to be included as salary and creditable service time, they wouldn't have allowed for an offset against it. Thank you, Counselor Carlson. Good afternoon. May it please the Court, Mr. Carlson. My name is Thomas Dudai. I represent Firefighter Soto's in this matter. And ordinarily I start at the beginning, but I think I have to start at the end. The last argument that was addressed to this Court is absolutely not correct. Firefighter Soto's had entered into a lump sum workers' compensation agreement on February 2, 2014. If Firefighter Soto's had not settled this case, if he was still under active treatment, he would have been getting TTD on the date of the hearing. And whether the salary was $73,000 or $75,000 or $90,000, the pension fund would have been able to offset temporary total disability benefits paid simultaneously with the pension and the offset would apply. The only reason offset didn't apply here is his TTD stopped in February of 2014. Had it been ongoing, and I have tons of cases where it's ongoing, it would have been covered. To answer all of the Court's questions, number one, temporary total disability compensation is two-thirds of the gross pay on the date of the accident. That does not change. For pension purposes, disability is 65% of the wage attached to the rank. Not the wage paid to the firefighter. 4-110 doesn't say the wage paid to the firefighter. It says the wage attached to the rank on the date the firefighter terminated from his or her employment. In fact, I think the words are on the payroll. The argument that Firefighter Soto's never received $75,362 is not true. I quoted in my supplemental brief to this Court my cross-examination of the Human Resources Director. She did initially testify that he was never paid that. That was never his rate of pay. I said, you indicated Mr. Soto's didn't participate in the general wage increase after January 12, 2014. Didn't he receive a payment for all of his accumulated sick time in March of 2014? Answer, yes, you are right. That would have been computed at the higher rate. That would have been computed at the rate of $75,674. I don't have the record in front of me. I guess I can't say one way or the other. Can I figure it for you and give me a moment here? Sure, yeah, you are correct. I stand corrected. So the record is clear that Firefighter Soto's, in fact, did receive compensation for service performed, vacation time accrued at the higher rate. At this juncture, the important thing to understand is that it was the defendant that brought into issue these opinions of the Illinois Department of Insurance, these advisory opinions that the Court entered. I'm going to return earlier to this. The Pension Board never mentioned the Part 4402 of 50 Administrative Code in its decision. It never mentioned to the Circuit Court the advisory opinions of the Illinois Department of Insurance. That first came to the attention of myself in their brief filed with this Court. And in the course of filing, preparing a motion to strike that, I discovered this Department of Insurance opinion that's right on point. Oddly enough, it came from my office. My paralegal who was proofreading my motion discovered this. Have you thanked the opposing counsel? Huh? Yeah. Have you thanked the opposing counsel? Well, I thank Mr. Carlson all the time. I see him with some degree of regularity. But in any event, it's on all forms. What the Department of Insurance says is, this was a firefighter who was, when he was injured, he was a firefighter. During the period of one year that he was receiving his regular salary under PETA, he got a promotion to engineer. And that's a pay raise. So not only did he get a step increase, which is just a seniority increase, he got a pay raise based on a new job. A new job that he never performed, ever. And so the pension board's question was, do we pay his line-of-duty disability based on the position of engineer when he left the payroll? That's his promoted position, even though he never worked it. And the Department of Insurance says, in this opinion, that the way to do this, the decision whether or not a person has been removed from the payroll, is you begin with the PETA benefit. When that expires, do they get temporary total disability compensation? And as long as they're on TTD, they're still, for pension purposes, on the payroll. I think the most, and I don't want to put too much weight on these Department of Insurance advisory opinions, because by statute, they are not binding. The statute says these are not binding. But I think the most interesting thing in this opinion is it doesn't mention 4402.30. It doesn't say a word about that. And it doesn't say a word about that because 50 Illinois Administrative Code has nothing to do with 4-110. 4-110 does not talk about computing the amount of the pension. It talks about the date that the salary attached to rank will be used by the board to establish the disability. So the statute itself, there is a statutory disconnect between the salary attached to the rank and the personal salary paid to the firefighter. And that's always the case. It's not just in this case. And the court accurately reflected that the first opinion here was the right opinion, where they granted him his disability based on March 7, 2014, which was the last day he was, in fact, on the payroll. Which is the day he was removed from the payroll.  Well, yeah, okay, but that's really the issue is when is the day he's removed from the payroll? It is. And it's an issue of law. Okay, because there's no fact issue here. Okay? The settlement, the testimony, the pension fund keeps citing to the supplemental record that they made when they altered their opinion. And they ignore the testimony of the firefighter during the hearing in chief. And he did testify that between the date of the injury and his last day that he was on the payroll, there were times he was doing light duty, there was times he was using sick pay, there were times he was receiving temporary total disability compensation, and the last check he got was for his accumulated vacation pay, which he would have earned during his career as a firefighter for the city. So there's really no issue of fact to be determined. The facts are clear. The facts are that he was intermittently on and off of work until late in 2013. He went on temporary total disability until February 2, 2014, and then he received his accumulated sick time March of 2014. It's an issue of law. It's a de novo issue. And the reason we're having so many problems with this is that the decision does not contain a determinant of reasoning. And contrary to the argument of the defendant, paragraphs 15 and 16 of my complaint, and the number one error in my complaint, which wasn't relied on by the circuit court, was an Open Meetings Act violation. The decisions in July of 2014 and the decision in September of 2014 never contained the determinative reasoning that the pension board used either to establish the initial amount and to establish why it changed that amount. And so the reason I disagree that there's any deference to be afforded the decision on the pension fund is twofold. Number one, it's an issue of law, which is de novo. And number two, there simply are no factual findings which are contained in the record made by the defendants with which this court can defer, to which this court can defer. The testimony is clear. It's uncontroverted. And I'm not asking for remand. Boy, that would be the last thing in the world I would want. But I think it's clear that we did in fact prove that the last day on the payroll was March and that should have been the relevant date. So your position is the undisputed facts are sufficient facts to form the basis to decide it as an issue of law. Yeah, exactly, as an issue of law. Correct. You're not asking for remand for determination of facts. No, we all know what happened here. Okay. And if you – the next argument I wanted to address is until the defendant filed its brief in circuit court, I never knew that they contended that 50 Illinois Administrative Code 4402.3 had anything at all to do with this case. When you go back to the rule, and this is what the trial court said, and I agree. You're here to review what the pension board did, not the trial court. But she pointed out that the part 4402 says the purpose of this part of the rules is to give content to the definition of the term salary under 4-124, not 4-110. Rule 4402 deals with the amount of money that will be pensionable. And the reason that they outlaw lump sums is they don't want to artificially inflate that last figure so that you get these situations that make the press periodically with some public person who is receiving a pension, and it's $150,000 because the last paycheck is inflated. 4402 has nothing to do with this case. This case is simply a straight statutory interpretation of 40-110. 40-110 says that it's the salary attached to rank on the date after they leave the payroll, the undisputed evidence of the human resources director is that the payroll check was written March 7, 2014. The original order of the pension fund was correct, and I ask that you affirm the trial court who held that that is the order that ought to determine the benefits for firefighters. If so those, I thank you for your time and attention this afternoon. I'm sorry I finished early. Okay. Well, since counsel chose to read from that Department of Insurance opinion, it's also important to read another portion in that same opinion that says, alternatively, if for some reason the individual was taken off the payroll, i.e., the municipality made a payroll change and benefits were paid from some other means prior to the payment of TTV benefits, then the individual's pension would be based on the rank of firefighter. So what it talks about, again, is that there's a factual determination here about when somebody leaves the payroll, and that not automatically when you receive TTV benefits does that constitute a continued service. So even in that case where Mr. Duda went through and explained this firefighter received a promotion and then his pension was based upon that, again, the Department of Insurance gives great warning to not paint this with a broad brush and state that this is a very factually specific determination. And then it says, if the municipality made a payroll change and benefits were paid by other means prior to the payment of TTV benefits, then it may no longer continue, thereby showing that even if the court were to say somehow that the record does not establish that the $73,000 amount as the final administrative determination was reached, that several other facts will need to be illuminated. And as such, I know that Mr. Duda would not like this to be remanded for a variety of very good reasons because there's non-record evidence that would not be very great for his client. So as such, if for whatever reason the court is so inclined to find that the board erred, we do ask for remand and further development of the record. The fact that I wasn't able to answer several of your questions is enough reason for that to be able to be true. However, we believe that the record evidence makes clear that in fact the pension board is right because you can't artificially create post hoc salary or post hoc service. His service as a firefighter ended in the determination of the board as a matter of fact and as confirmed by the testimony of the HR director, after PETA benefits were done, he was removed from the municipal payroll. He then was put onto workers' comp. Now, he may have had some sort of grievance process or something else, and the fact that we don't know how those lump sum benefits were paid out gives you enough information to know that if you disagree with the pension board's reasoning or as Mr. Duda stated in his argument, that the problems here are caused by the lack of reasoning in the decision, as this court did in Coyne v. Milan, it is appropriate to remand to the pension board for further development of the facts and explanation of the court's reasoning. Therefore, should this court choose not to affirm the pension board's decision, we would ask that you remand it for further development and a more illuminating decision in order to be issued by them to assist Mr. Duda in understanding why the pension board reached them. For the variety of reasons stated in the pension board's response to the plaintiff's reply brief, it's important to note that the Open Meetings Act arguments were not ever raised before the pension board and they were administratively waived. In addition to that, substantively, there's no requirement that the pension board do anything other than write a basic written decision in order. This is an administrative body. They're not held to the same rigors as you are, and I'm not aware of any actual law that requires you to create great explanations of why you do things. I appreciate that you do because it makes our job a lot easier. But again, this is an administrative body that has to basically say, we attached your rank to salary on this day. Here's why. Because you were removed from the payroll. And is there sufficient facts in the record? We don't apparently agree on what the facts are because the pension board and the HR director said that he was removed from payroll in March of 2013. In sum, it's also important to note that the accumulated benefit time is never salary. And Mr. Duda says that somehow, what is pensionable salary is then disconnected for when your service time ends. Creates a myopic view of the pension fund or the pension code to say that somehow, your last day of work is not connected to actual pensionable salary. Or that somehow, you can manufacture a salary that you were never paid to be your pensionable salary. That vortex of ignoring the total construct of Article 4 is totally creation of an absurd result. That pensions have to be paid based upon salaries that were actually earned by employees. That doesn't seem like that's an absurd concept. And it certainly is a basic one that should be done. Mr. Duda, several times in his argument, seemed to confuse the terms salary and wage. And there are reasons that there are differences between those two. And it goes to show, if anything, he answered your question better than I did, Justice Holdridge. TTD is not based upon salary. It's based upon a wage on a last day paid during an injury. It's not based upon salary. And as such, it's not salary. And therefore, it can't be the salary attached to rank. TTD is neither service nor salary because he was removed from payroll. As such, I ask you to affirm the Pension Board's decision, or in the alternative, remand it for further development of the record. Thank you. Thank you, Counsel. And now we'll take a recess for a panel debate. All right. This court stands in recess.